UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JOHN WESLEY KIMBROUGH, III,

    Plaintiff,

  v.                                      CAUSE NO. 3:21-CV-293 DRL-MGG

DAWN BUSS,

    Defendant.

OPINION AND ORDER

John Wesley Kimbrough, III, a prisoner without a lawyer, filed a complaint against Dawn Buss, the Deputy Warden at Indiana State Prison. ECF 2. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Under 28 U.S.C. § 1915A, the court still must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against an immune defendant.

Mr. Kimbrough alleges that shakedowns at the Indiana State Prison are being conducted in a discriminatory manner. Though approximately sixty percent of the beds in his unit are occupied by Black inmates, ninety percent or more of the shakedowns are conducted on Black inmates. He further alleges that fifteen Black inmates, including him, were targeted for shakedowns on October 17, 2019.

He filed an informal grievance about the alleged discrimination on October 21, 2019. He also wrote a letter and sent a copy to Ms. Buss. At the time Mr. Kimbrough filed the grievance and sent the letter, he was employed in the law library. On November 7, 2019, Mr. Kimbrough's supervisor, Angela McGee, called him into her office. She told Mr. Kimbrough that Ms. Buss told her to tell him that, if he sent out any more letters, she was going to fire him.

Mr. Kimbrough filed a formal grievance about the discriminatory shakedowns, which was denied. The response indicated that Ms. Buss told the grievance specialist that the shakedowns were not racist or discriminatory. Mr. Kimbrough appealed the denial of his grievance. It too was denied.

Prior to these events, Mr. Kimbrough filed a lawsuit regarding a medical issue. *Kimbrough v. Neal*, No. 3:18-CV-887-PPS-MGG (filed October 31, 2018). He used the resources available to him as an employee of the law library to prepare and litigate that lawsuit. He maintained various documents related to the lawsuit in electronic form. Counsel was appointed to represent Mr. Kimbrough in December 2018. In June 2020, Mr. Kimbrough agreed to send his counsel copies of various documents pertaining to his lawsuit. He placed his electronic documents on an encrypted CD and attempted to send it to his counsel along with signed interrogatories. He submitted it to his case worker, Jacqueline Mayes, for inspection and mailing. When Ms. Mayes inspected the mail, she removed the CD and said that he was not allowed to have it. Ms. Mayes alerted Ms. Buss, and Ms. Buss directed that Ms. Mayes issue a Class B conduct report for theft or unauthorized property. Mr. Kimbrough contends that the CD was neither stolen nor

prohibited. If convicted of a Class B conduct violation, Mr. Kimbrough could be removed from his job. Mr. Kimbrough learned from another prisoner that Ms. Buss intended to use this situation to fire him and that she instructed Ms. McGee and Ms. Mayes to falsify an offender evaluation and performance report.

A hearing on the alleged conduct violation was held July 7, 2020, before Disciplinary Hearing Officer B. Leonard. Mr. Kimbrough explained that he did not know that it was wrong to send a CD containing legal documents to his attorney and that he had been authorized to have the CD. The charge was reduced to Class C abuse of mail. Mr. Kimbrough pleaded guilty though he did not believe he was abusing the mail because the Class C charge would mean that he did not have to lose his job. He knew that Ms. McGee did not want to fire him. She made it clear that, if she was forced to do so, she would hold the position open for 90 days and reinstate him.

On July 17, 2020, Mr. Kimbrough was called into Ms. McGee's office. Ms. McGee explained that Ms. Buss was forcing her to fire him and that she would not be permitted to rehire him. Just five months earlier, Ms. McGee had testified at a deposition that Mr. Kimbrough was a good employee, lending credence to his allegations.

On July 22, 2020, Mr. Kimbrough was called into Ms. Mayes' office to sign a falsified Offender Evaluation and Performance report showing an overall rating of below average and noting a constant need for supervision. This contradicted an evaluation from earlier the same month giving Mr. Kimbrough an above average rating.

When a prisoner leaves a job, they must remain idle for 90 days unless Ms. Buss waives the 90-day idle period. Ms. Buss would not waive this requirement for Mr.

3

Kimbrough. Ms. Buss has waived the 90-day idle period for several non-Black inmates. At the time the complaint was drafted, Mr. Kimbrough remained unemployed.

Mr. Kimbrough alleges that Ms. Buss retaliated against him in violation of the First Amendment by arranging for false disciplinary charges to be brought against him and having him fired from his job. "To prevail on his First Amendment retaliation claim, [Mr. Kimbrough] must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendant['s] decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotation marks and citations omitted). Here, giving Mr. Kimbrough the benefit of the inferences to which he is entitled at this stage, the court finds that he has stated a claim for retaliation against Ms. Buss. Though additional evidence may show otherwise, the allegations are concerning at the start.

Mr. Kimbrough also alleges that Ms. Buss violated his rights under the equal protection clause by shaking down a disproportionate number of Black inmates' cells (including his) and by waiving the 90-day idle period following the termination of employment for non-Black inmates but not Black inmates (including him). He further alleges that charges against white inmates for engaging in racist conduct have been dismissed while charges against him for a minor violation resulting from a mere misunderstanding have not been dismissed. "Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Lisle v. Welborn*, 933 F.3d 705, 719 (7th Cir. 2019) (citing *Wolff v. McDonnell*, 418 U.S.

539, 556 (1974)). To state such a claim, a prisoner must allege that the "defendants intentionally treated him differently because of his race . . . ethnicity, sex, religion, or other proscribed factor[.]" *Id.* at 719–20 (citing *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016)); *see also David K. v. Lane*, 839 F.2d 1265, 1271–72 (7th Cir. 1988) (collecting cases and noting discrimination must be intentional, purposeful, or have a discriminatory motive). Thus, Mr. Kimbrough must show "the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group." *Id.* Here too, when given the inferences he is entitled to at this early stage of the case, Mr. Kimbrough has stated a claim.

For these reasons, the court:

(1) GRANTS John Wesley Kimbrough III leave to proceed against Dawn Buss in her individual capacity for compensatory and punitive damages for retaliating against him for complaining about the discriminatory shakedowns by having false disciplinary charges brought against him and having him fired from his job, in violation of the First Amendment;

(2) GRANTS John Wesley Kimbrough III leave to proceed against Dawn Buss in her individual capacity for compensatory and punitive damages for allegedly subjecting Black inmates (including Mr. Kimbrough) to shakedowns more frequently than non-Black inmates, waiving the 90-day idle period for non-Black inmates but not Black inmates (including Mr. Kimbrough), and dismissing disciplinary charges against white

5

inmates while pursuing less serious charges against Black inmates, in violation of the Equal Protection Clause;

(3) DISMISSES all other claims;

(4) DIRECTS the clerk to request Waiver of Service from (and if necessary, the United States Marshals Service to serve process on) Dawn Buss at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 2), under 28 U.S.C. § 1915(d);

(5) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of the defendant if she does not waive service and it has such information; and

(6) ORDERS, under 42 U.S.C. § 1997e(g)(2), Dawn Buss to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

November 18, 2021 *s/ Damon R. Leichty*
Judge, United States District Court